UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

RICHARD HAMMOND and                                    No.  11 CIV 3179 (JGK)
SUZANNE HAMMOND,

                         Plaintiffs,

  – against –

TOY INDUSTRY ASSOCIATION, INC.,
FREEMAN DECORATING SERVICES, INC.,
FREEMAN DECORATING CO., NEW YORK
CONVENTION CENTER DEVELOPMENT
CORPORATION and JEROME BELL,

                        Defendants.

-------------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANTS FREEMAN DECORATING
SERVICES, INC. AND FREEMAN DECORATING CO. IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT AND CROSS-CLAIMS OR FOR
JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ......................................................................................... ii - v

PRELIMINARY STATEMENT ...................................................................................... 2

ARGUMENT..................................................................................................................... 5

I.    PLAINTIFFS' ACTION AGAINST THE FREEMAN DEFENDANTS MUST
      BE DISMISSED BECAUSE ANY LIABILITY IS VICARIOUS OF THE
      ALLEGED NEGLIGENCE OF JEROME BELL, AND THE CLAIMS AGAINST
      BELL ARE BARRED BY THE STATUTE OF LIMITATIONS ...................................... 5

      The Governing Standard ...................................................................................... 5

A. Plaintiff's Failure to Sue Jerome Bell Within the Period of Limitations
   Extinguished the Claims Against the Freeman Defendants for Vicarious Liability............... 6

B. As a Matter of Law Plaintiffs May Not Pursue Claims for Negligent Training and
   Supervision of Bell Where The Underlying Liability Claim is for Respondeat
   Superior Liability ...................................................................................................... 11

II.   TIA'S CROSS-CLAIM FOR FAILURE TO PROCURE INSURANCE FOR ITS
      BENEFIT AND ITS CONTRACTUAL INDEMNIFICATION CLAIM AGAINST
      FDC MUST BE DISMISSED BECAUSE THE FDS-TIA CONTRACT DOES NOT
      IMPOSE SUCH REQUIREMENTS, AND TIA HAS NO CONTRACT WITH FDC ...   13

III.  MRS. HAMMOND'S LOSS OF CONSORTIUM CLAIM MUST BE DISMISSED
      BECAUSE HER HUSBAND'S PERSONAL INJURY ACTION IS LEGALLY
      INSUFFICIENT............................................................................................................. 16

IV.   ALL COMMON LAW CROSS-CLAIMS AGAINST FDS and FDC
      MUST BE DISMISSED ................................................................................................ 17

CONCLUSION.................................................................................................................. 17

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                    <u>Page</u>

<u>Acito v. Imcera Group, Inc.</u>, 47 F.3d 47
(2d Cir. 1995)                                                                  5

<u>Argo Communications Corp.</u>, 134 B.R. 776
(Br. S.D.N.Y. 1991)                                                             14

<u>Ashcroft v. Iqbal</u>, 556 U.S.---, 129 S.Ct. 1937,
1949, 173 L.Ed.2d 868 (2009)                                                    6

<u>Black v. Consolidated Freightway Corp. of Delaware</u>
219 F. Supp. 2d 243 (E.D.N.Y. 2002)                                             3, 6, 9, 10

<u>Bonwit Teller, Inc. v. Jewelmasters, Inc.</u> (In re <u>Hooker</u>
<u>Inves., Inc.</u>), 162 B.R. 426, 430 (Bankr. S.D.N.Y., 1993)                  6

<u>Brass v. American Film Tech., Inc.</u>, 987 F.2d 142 (2d Cir. 1993)           6

<u>Bush v. Eifert</u>, 27 A.D.2d 950, 279 N.Y.S.2d
368 (2d Dep't 1967), aff'd, 22 N.Y.2d
681, 291 N.Y.S. 372 (1968)                                                      11

<u>Chiraboga v. Ebrahimoff</u>, 281 A.D.2d 353, 722
N.Y.S.2d 533 (1st Dep't 2001)                                              10

<u>Cody v. Village of Lake George</u>, 177 A.D.2d 921,
576 N.Y.S.2d 912 (3d Dep't 1991)                                                16

<u>Colon v. City of New York</u>, 287 A.D.2d 591, 731
N.Y.S.2d 881 (2d Dep't 2001)                                                    9

<u>Conley v. Gibson</u>, 355 U.S. 41, 78 S. Ct.
99, 2 L. Ed. 2d 80 (1957)                                                       5

<u>Crowley v. Larkin, Pluznick, Inc.</u>, 2001 WL 210496
(E.D.N.Y. Feb. 26, 2001)                                                        3

<u>Designs, Inc. v. Old Navy, LLC</u>, ---F.3d----, 2011 WL
2135734 (2d Cir. June 1, 2011)                                                  5

<u>DiFilippi v. Huntington Hospital</u>, 203 A.D.2d 32, 610
N.Y.S.2d 552 (2d Dep't 1994)                                                    9

Evans v. Famous Music Corp., 1 N.Y.3d 452, 775
N.Y.S.2d 757 (2004)                                              15

Evans v. Visual Technology, Inc., 953 F. Supp. 453
(N.D.N.Y. 1997)                                                  16

Furia v. Furia, 116 A.D.2d 694, 498 N.Y.S.2d
12 (2d Dep't 986)                                                16

Giannola v. Shepard Exposition Services,
Index No. 102463/2004 (Sup. Ct. N.Y. Co.
Slip Op. Apr. 4, 2007) (Appendix)                                16, 17

Gould v. Dan's Supreme Supermarket, Inc., 154
A.D.2d 509, 546 N.Y.S.2d 379 (2d Dep't 1989)                     16

Greenfield v. Philles Records, Inc., 98 N.Y.2d 562,
750 N.Y.S.2d 565, 569 (2002)                                     15

Griffin Brothers, Inc. v. Yatto, 68 A.D.2d 1009, 415
N.Y.S.2d 114 (3d Dep't 1979)                                     14

Harris v. Mills, 572 F.3d 66 (2d Cir. 2009)                      5

Hayden v. Paterson, 594 F.3d 150 (2d Cir. 2010)                  5, 6

Higazy v. Millenium Hotel and Resorts, 346 F. Supp. 2d
430 (S.D.N.Y. 2004), rev'd on other grounds,
Higazy v. Templeton, 505 F.3d 161 (2d Cir. 2007)                 12

Karaduman v. Newsday, Inc., 51 N.Y.2d 531, 435
N.Y.S.2d 556 (1980)                                              7, 8

Karoon v. New York City Tr. Auth., 241 A.D.2d 323,
659 N.Y.S.2d 27 (1st Dep't 1997)                                 11

LaBounty v. Adler, 933 F.2d 121 (2d Cir. 1991)                   5

Lee v. J.B. Hunt Transport, Inc., 308 F.Supp.2d 310
(E.D.N.Y. 2004)                                                  11, 12

Liddell v. Slocum-Dickson Medical Group, P.C., 273 A.D.2d
924, 710 N.Y.S.2d 278 (4th Dep't. 2000)                          11

iii

Liff v. Schildkrout, 49 N.Y.2d 622, 427 N.Y.S.2d 746 (1980)    16

Litwin v. Blackstone Group, L.P., 634 F.3d 706 (2d Cir. 2011)    5

Lupinski v. Villiage of Ilion, 59 A.D.2d 1050, 399
N.Y.S.2d 956 (4th Dep't 1977)    14

Magriz v. St. Barnabas Hospital, 43 A.D.3d 331, 841
N.Y.S.2d 245 (1st Dep't 2007)    8

Marotta v. Palm Management Corp., 2009 WL 497568
at *4 (S.D.N.Y. Feb. 25, 2009)    11

Marquart-Glenn Corp. v. Lumelite Corp., 111 F.R.D. 175
(S.D.N.Y. 1951)    14

Mellencamp v. Riva Music Ltd., 698 F. Supp. 1154
(S.D.N.Y. 1988)    15, 16

Murns v. City of New York, 2001 W.L. 515201 at *5
(S.D.N.Y. May 15, 2001)    11

Nieves v. City of Rochester, 2011 WL 867605 (W.D.N.Y.
March 10, 2011)    13

Nisselson v. Drew Indus., Inc., (In re White Metal
Rolling & Stamping Corp.), 222 B.R. 417
(Bankr. S.D.N.Y. 1998)    6

Precise-Marketing Corp. v. Simpson Paper Co.,
1996 WL 285364 (S.D.N.Y. May 30, 1996)    16

Rauch v. Jones, 4 N.Y.2d 592, 176 N.Y.S.2d 628, (1958)    10

Rose v. Gelco, 261 A.D.2d 381, 688 N.Y.S.2d
259 (2d Dep't 1999)    10

Rosetti v. Bd. of Ed. of Schalmont Central
School Dist., 277 A.D.2d 668, 716 N.Y.S.2d
460 (3d Dep't 2000)     11

Rothfarb v. Brookdate Hospital, 139 A.D.2d 720, 527
N.Y.S.2d 473 (2d Dep't 1998)     16

Scheuer v. Rhodes, 416 U.S. 232, 40 L.Ed 2d
90, 94 S. Ct. 1683 (1974)     5

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124
(2d Cir. 1994)     5

State Farm Ins. Co. v. Central Parking Systems, Inc., 18
A.D.3d 859, 796 N.Y.S.2d 665 (2d Dep't 2005)     12

Statton Group, Ltd. v. Sprayregen, 458 F. Supp. 1216
(S.D.N.Y. 1978)     15

Stone v. Williams, 64 N.Y.2d 639, 642, 485 N.Y.S.2d 42 (1984)     17

Tapinekis v. Rivington House Health Care Facility, 17
A.D.3d 572, 793 N.Y.S.2d 484 (2d Dep't 2005)     17

United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267,
113 L.Ed. 2d 335 (1991)     5

Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.,
1 N.Y.3d 470, 773 N.Y.S.2d 765, (2004)     15

Walsh v. Faxton-Children's Hospital, 192 A.D.2d 1106,
596 N.Y.S.2d 260 (4th Dep't. 1993)     8

W.W.W. Assocs. V. Giancontieri, 77 N.Y.2d 157,
565 N.Y.S.2d 440 (1990)     15

RULES AND STATUTES

Fed. R. Civ. P. 12(b)(6)     5

Fed. R. Civ. P. 12(c)     14

N.Y. Pub. Auth. L. §2570     3, 6

N.Y. Veh. & Traf. L. § 388(1)     9

Defendants Freeman Decorating Services, inc. ("FDS") and Freeman Decorating Co. ("FDC" and collectively "Freeman") submit this memorandum of law in support of their motion to dismiss the complaint in this action, and all common law cross-claims for contribution, apportionment and indemnification, or for judgment on the pleadings. As discussed below, Freeman's[1] alleged liability, which is vicarious of defendant Jerome Bell's alleged negligence, was extinguished as a matter of law, when plaintiffs failed to commence an action against Mr. Bell before the statute of limitations against him expired. As a matter of law, Freeman cannot be held liable vicariously for acts or omissions by Mr. Bell which are no longer actionable against him. Nor can the Freeman defendants be held liable for negligent training or supervision, where, as here, it is alleged that Bell was acting within the scope of his employment or agency with Freeman.

FDS and FDC also seek dismissal of the cross claim of defendant Toy Industry Association, Inc. ("TIA") for failure to procure insurance coverage for TIA's benefit because the contract between FDS and TIA does not contain an insurance procurement provision, and because there is no contract between FDC and TIA. FDC, which has no contract with TIA owes no contractual obligations to TIA, and, accordingly, FDC also seeks dismissal of TIA's cross-claim for contractual indemnification.

---

[1] As set forth in the accompanying Declaration of Dawnn Repp, Senior Vice President and General Counsel of FDS, FDC, which is a holding company, and the ultimate parent of FDS, was not involved in the International Toy Show where plaintiff alleges he was injured, did not enter into a contract with TIA with respect to that event and was incorrectly named as a defendant in this action. Accordingly, FDC has asked plaintiffs to stipulate to discontinue this action against FDC. In the event that the parties do not stipulate to discontinue voluntarily as against FDC, because this will require a factual showing outside of the pleadings, if dismissal of FDC is denied, FDC will move for summary judgment based on its non-involvement in the events alleged to give rise to plaintiffs' claims.

PRELIMINARY STATEMENT

In this action, which was removed based on diversity of citizenship from Supreme

Court, New York County, plaintiff Dennis Hammond, an exhibitor at the Toy Fair held at the

Javits Center in February, 2010, seeks to recover damages for personal injuries he alleges he

sustained when a plastic crate tumbled from the blades of a forklift which was being operated by

Jerome Bell, and came into contact with him.[2] (Comp. ¶ 76-8[3]).  The Complaint alleges that

Bell's negligence was the proximate cause of Hammond's injuries.  (Comp. ¶ 77).  The Freeman

defendants deny that Mr. Bell was negligent.  (See Answer, dated July 6, 2011 - ECF # 9).  Mr.

Bell was employed by New York Convention Center Operating Corp. ("NYCCOC"), which is

the exclusive source of teamster labor for trade shows and events at the Jacob K. Javits

Convention Center.  Bell was assigned by NYCCOC to assist FDS, which had been retained by

TIA as its official services contractor to provide various services, including arranging for

NYCCOC's teamsters to move freight into and out of the exhibition hall.  Hammond's incident

occurred while he was moving a crate during the move-in and set up of the Toy Fair.

The Complaint alleges active negligence only by Mr. Bell: "on February 17,

2010, while plaintiff RICHARD HAMMOND was lawfully and carefully working at the

American International Toy Fair, he was caused to sustain serious and severe personal injuries

when freight which had been loaded onto a HILO forklift being operated by defendant JEROME

BELL fell and forcibly struck plaintiff RICHARD HAMMOND." (Comp. ¶ 76).  Plaintiffs'

---

[2]  Mrs. Hammond asserts derivative loss of consortium/society claims.  (Comp. ¶ 90-93).

[3]  The State Court complaint is annexed as an Exhibit to the Notice of Removal, ECF # 1, and to Jerome Bell and
New York Convention Center Development Corp.'s motion to dismiss. (ECF # 10-12).  The Notice of Claim filed
by plaintiffs, which seeks to hold NYCCOC liable vicariously for Bell's operation of the forklift in connection with
this accident is an exhibit to the State Court complaint.

Notice of Claim, similarly, ascribes all active negligence to Mr. Bell alone.[4]  After stating that "the precise nature of the negligence of New York Convention Center Operating Authority and Jerome Bell will be more fully particularized upon request," the Notice of Claim alleges that Mr. Hammond "sustained serious injuries when a 'HILO' forklift that, upon information and belief, was being operated by JEROME Bell Badge #8722, when freight which had been on the 'HILO' forklift tumbled down and struck claimant."

There are no factual allegations that active negligence by FDS, FDC, or, for that matter any defendant or individual other than Mr. Bell, was the proximate cause of Hammond's injuries either in the complaint or in the notice of claim. Indeed, there is no allegation that the underlying incident would have occurred in the absence of the allegedly negligent handling of a forklift by Mr. Bell who was acting within the scope of his employment (or agency) with defendants.[5]  To the contrary, the complaint seeks to impose vicarious liability on FDS and FDC based on their alleged status either as Bell's putative employer, or on Bell's status as an alleged agent of the Freeman defendants, and their alleged responsibility for the consequences of his negligence.

The Complaint concedes, and the terms of the License Agreement governing the Toy Show confirm, that freight handling activities like those performed by Mr. Bell, were to be performed exclusively by Javits Center (NYCCOC) employees, who were assigned to various

---

[4]  The Notice of Claim misnames Bell's employer as New York Convention Center Operating Authority (rather than Operating Corp.), and seeks to hold both NYCCOC and Mr. Bell liable for the allegedly negligent operation by Mr. Bell of the forklift. Plaintiffs, however, did not sue NYCCOC apparently due to the expiration of the one year statute of limitations contained in N.Y. Pub. Auth. L. § 2570. Instead, plaintiff sued New York Convention Center Development Corp. which owns, but does not operate, the Javits Center.

[5]  At the Rule 16/pre-motion conference, plaintiffs' counsel characterized Bell as a "special employee" because he was assigned to assist Freeman in accomplishing its freight handling obligations. *See Black v. Consolidated Freightways Corp. of Delaware*, 219 F. Supp.2d 243 (E.D.N.Y. 2002) and *Crowley v. Larkin, Pluznick, Inc.*, 2001 WL 210496 (E.D.N.Y. Feb. 26, 2001) (both holding that NYCCOC-employed teamsters assigned to Freeman for freight handling at the Javits Center were special employees of FDS).

contractors such as FDS.  (Comp. ¶ 42-3; Tisman Aff. Exh. 1 - License Agreement ¶ 15 and its

Exhibit A - Work Rules). Hammond's Notice of Claim against NYCCOC, and the documents

submitted in support of Bell's motion to dismiss, confirm Bell's direct employment by

NYCCOC.  Nevertheless, Hammond also alleges that Bell was employed by FDS and FDC

(Comp. ¶ 33-4), (and by the other defendants – Comp. ¶ 32, 35) and was acting within the scope

of his employment when the accident occurred. (Comp. ¶ 36-9).  Plaintiffs further allege that

Bell "was assigned to [FDS and FDC] to assist them in performing their work" when the

accident occurred. (Comp. ¶ 49-50).  Although the complaint makes generalized allegations that

the various defendants, including Freeman, had duties to supervise and train Bell, and to

maintain the Javits Center premises and the forklifts, conspicuously missing from the complaint

are any factual allegations that something other than Bell's allegedly negligent operation of the

forklift was the proximate cause of Hammond's accident.  The complaint also is devoid of

allegations of a premises defect, or a defective forklift.

       As discussed below, the complaint, and common law cross-claims fail to state a

claim for which relief can be granted against either FDS or FDC.  FDC also is entitled to

dismissal of TIA's contractually-based cross claims because there is no contract between TIA

and FDC, and FDS is entitled to dismissal of TIA's failure to procure insurance cross-claim

because the contract between TIA and FDS does not impose such a requirement.

ARGUMENT

I     PLAINTIFFS' ACTION AGAINST THE FREEMAN DEFENDANTS MUST BE
DISMISSED BECAUSE ANY LIABILITY IS VICARIOUS OF THE ALLEGED
NEGLIGENCE OF JEROME BELL, AND THE CLAIMS AGAINST BELL ARE
BARRED BY THE STATUTE OF LIMITATIONS

The Governing Standard

Dismissal for failure to state a claim under Rule 12(b)(6), or judgment on the

pleadings under Rule 12(c), is appropriate where it appears that a plaintiff can prove no set of

facts upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41,

45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *L-7 Designs, Inc. v. Old Navy, LLC*, ---F.3d---, 2011

WL 2135734 (2d Cir. June 1, 2011); *Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010); *Acito v.

Imcera Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d

1124, 1127 (2d Cir. 1994). All well-pleaded factual allegations contained in the complaint are to

be taken as true, *see Scheuer v. Rhodes*, 416 U.S.232, 236, 40 L.Ed 2d 90, 94 S. Ct. 1683 (1974);

*Acito*, 47 F.3d at 51; *Shields*, 25 F.3d at 1127, and construed in the light most favorable to the

plaintiff. *See LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). The court must accept as true

all the factual allegations in the complaint. *United Sates v. Gaubert*, 499 U.S. 315, 327, 111

S.Ct. 1267, 113 L.Ed.2d 335 (1991).

However, this "tenet is inapplicable to legal conclusions, and threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Hayden*, 594 F.3d at 161 (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Additionally,

to survive a motion to dismiss, a complaint must plead enough facts to state a claim for relief that

is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) citing

*Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Hayden*, 594 F.3d at 160-1.

In addition to the factual allegations in a complaint, the court may consider the contents of any documents attached to the complaint or incorporated therein by reference, matters as to which judicial notice may be taken, and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *See L-7, supra* at *1, *Brass v. American Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 422 (Bankr. S.D.N.Y. 1998); *Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Invs., Inc.)*, 162 B.R. 426, 430 (Bankr. S.D.N.Y., 1993).

This diversity action is governed by New York law. "A federal court sitting in diversity applies the law of the forum state and, in tort actions, New York courts generally apply the law of the jurisdiction where the tort occurred." *Black v. Consolidated Freightways Corp. Of Delaware*, 219 F. Supp.2d 243, 247 n.3 (E.D.N.Y. 2002) (and cases cited therein). Under these standards, and New York law, the Freeman defendants are entitled to judgment on the pleadings.

A.   Plaintiff's Failure to Sue Jerome Bell Within the Period of Limitations Extinguished the Claims Against the Freeman Defendants for Vicarious Liability

In the companion motion to dismiss by Jerome Bell, his counsel explains that claims against Mr. Bell are subject to both a Notice of Claim requirement under N.Y. Pub. Auth. Law § 2570, and a one year statute of limitations. (NYCCOC Mem. p. 7-8, ECF #12).  Mr. Bell's alleged negligence occurred, according to the complaint and the Notice of Claim, on February 17, 2010.  However, plaintiffs did not commence this action until May 6, 2011, almost three months after the statute of limitations had expired.  Under these circumstances, Mr. Bell's personal liability to plaintiffs, if any, was extinguished on February 17, 2011.  Consequently, the

-6-

Freeman defendants' alleged vicarious liability for the negligence claimed with respect to Mr.

Bell's conduct also was extinguished on February 17, 2011, when plaintiffs no longer had a

viable claim against Mr. Bell.

In *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 435 N.Y.S.2d 556 (1980), the

New York Court of Appeals held that Newsday, an employer, could not be held liable for the

tortious conduct of its reporter employees under a theory of *respondeat superior* where *Newsday*

republished (in book form) allegedly defamatory statements which previously had been

published in newspaper articles. The writers had failed to confirm information provided by

sources for the initial publication, which turned out to be false, but were not sued with respect to

the original publication as to which the statute of limitations ran. When the article was

republished in book form, the reporters were sued, along with *Newsday,* for libel. The New York

Court of Appeals concluded that because the libel claims with respect to the original newspaper

publication were time barred, the reporters could not be held liable when their articles were

republished without their involvement. The Court of Appeals further held that because no viable

claim survived against the reporters, and Newsday's liability, if any, was vicarious of the

reporters' libelous conduct, *Newsday* could not be held liable for the republication. Its holding

and analysis requires dismissal of plaintiffs' action against the Freeman defendants here:

> Having disposed of the issues involving the personal liability of the
> four individual defendants, we turn now to a consideration of the legal
> obligations of defendant Newsday. Initially, we note that we must decline
> plaintiff's invitation to hold Newsday potentially liable by simple
> application of the doctrine of *respondeat superior.* That common-law
> doctrine merely provides a theoretical means for transferring the liability
> of an employee to his employer and imposing upon the latter financially
> responsibility for the legally cognizable culpable conduct of the former.
> Given this principle, it is manifest that there can be no vicarious liability
> on the part of the employer if the employee himself is not liable, except
> perhaps in certain unusual circumstances not present here.

We have already determined that none of the four Newsday employees who were named as defendants in the instant action may be cast in damages for the libel on the basis of their alleged participation in the republication of "The Heroin Trail" by NAL. It follows that the suit against Newsday cannot be maintained solely on the theory that it is vicariously liable, since there is no primary liability upon which such a claim of vicarious liability might rest. To be sure, Newsday might possibly have been answerable for the allegedly tortious conduct of Newsday's three reporters in publishing the original series of articles. *Inasmuch as the reporters' liability for this publication was effectively extinguished when the Statute of Limitations on plaintiff's cause of action in libel expired, however, any vicarious liability that Newsday might have had in consequence of the employees' alleged misconduct must similarly be deemed extinguished.*

*Karaduman,* 51 N.Y.2d at 545-6 (footnotes and citations omitted) (emphasis added).

Simply stated, a party can *only* be held to be vicariously liable for an act if the principal who committed the act could still be held liable. *Walsh v. Faxton-Children's Hospital,* 192 A.D.2d 1106, 1107, 596 N.Y.S.2d 260 (4th Dep't. 1993). Thus, once the statute of limitations has expired for commencement of an action against the principal -- here Bell -- the adverse party can no longer commence an action against a vicariously liable party -- the Freeman defendants -- either.

In *Magriz v. St. Barnabas Hospital,* 43 A.D.3d 331,332, 841 N.Y.S.2d 245 (1st Dep't 2007) the First Department reversed denial of the hospital's motion for summary judgment where the statute of limitations had expired against the physicians whose negligence underlie plaintiff's vicarious liability claim. The Second Department in *Walsh, supra,* explained the settled rule that "while a hospital may be vicariously liable for acts of independent physicians … such rationale presupposes that the patient has a viable cause of action against the physicians who treated her." This is the case even where the vicariously liable party would still be within the statute of limitations, had it been the principal. *Id; Walsh,* 192 A.D.2d at 1106 ("Although the hospital may have been vicariously liable for [the principal's] negligence … the existence of

-8-

such a relationship may not serve as a basis for applying the continuous treatment doctrine to toll the Statute of Limitations") (citations omitted). *See, DiFilippi v. Huntington Hospital,* 203 A.D.2d 32, 610 N.Y.S.2d 552 (2d Dep't 1994) (reversing and dismissing claims against hospital for vicarious liability as time barred because underlying claims against the doctor were no longer actionable); *Colon v. City of New York,* 287 A.D.2d 591, 731 N.Y.S.2d 881, 882 (2d Dep't 2001) (reversing denial of branch of motion to dismiss claims against hospital for vicarious liability of physician against whom statute of limitations had run).

The principle that there can be no vicarious liability when a negligence claim is barred against an active tortfeasor, extends beyond situations where, as here, the statute of limitations has expired against the allegedly negligent employee or agent. For example, in *Black v. Consolidated Freightways Corp. of Delaware,* 219 F. Supp.2d 243 (E.D.N.Y. 2002), the court granted summary judgment dismissing the action of a forklift operator, who was injured while loading freight onto a trailer owned by Consolidated which had been leased to FDS, while in the special employment of FDS. Black stepped through a hole in the bed of the trailer. Black asserted that as the owner of the trailer, Consolidated, could be held liable vicariously for lessee FDS's allegedly negligent maintenance of the trailer, pursuant to N.Y. Veh. & Traf. L. § 388(1), which imputes liability to a vehicle owner for the negligent use and operation of the vehicle with the owner's permission.[6] However, exclusive remedy provisions of the Workers' Compensation Law precluded a claim against FDS, and, consequently, its negligence could not form the basis for Consolidated Freightway's vicarious liability:

> Black has conceded that his negligence claim against Freeman is
> barred by New York's Worker's Compensation Law. One of the purposes

---

[6] Section 388(1), in relevant part, provides: "Every owner of a vehicle used or operated in this state shall be liable and responsible for . . . injuries to persons . . . resulting from negligence in the use and operation of such vehicle . . . by any person using or operating the same with the permission . . . of such owner."

> of the exclusivity provisions of the Workers' Compensation Law is to prevent the possibility of double recovery – once under the Workers' Compensation statute, and once under a common-law negligence theory. If Black is permitted to proceed against Consolidated because of the provisions of Vehicle and Traffic Law Section 388, he would be able to make an end-run around the exclusivity provisions of the Workers' Compensation statute, and he might be able to recover twice for his injuries. Stated differently, even though Section 388 on its face permits any negligence by Freeman to be imputed to Consolidated, it would be improper to impute negligence to Consolidated in this case, because any negligence claim against Freeman is barred by the Workers' Compensation Law, and thus there is nothing to impute to Consolidated.

*Black*, 219 F. Supp.2d at 247-8. (citations and footnotes omitted). *See also, Rauch v. Jones*, 4

N.Y.2d 592, 176 N.Y.S.2d 628, 631 (1958) ("The statute, having deprived the insured employee

of a right to maintain an action against a negligent co-employee, bars a derivative action which

necessarily is dependent upon the same claim of negligence for which the exclusive remedy has

been provided." *Chiraboga v. Ebrahimoff*, 281 A.D.2d 353, 722 N.Y.S.2d 533 (1st Dep't 2001);

*Rose v. Gelco*, 261 A.D.2d 381, 688 N.Y.S.2d 259 (2d Dep't 1999) (same).

In *Chiraboga*, a parking garage attendant who was injured when a co-worker

negligently backed a customer's car into him, sued the owner of the vehicle under Section 388.

The trial court denied summary judgment in favor of the car owner reasoning that even though

the co-worker could not be sued due to the exclusive remedy provision of Workers'

Compensation, Section 388 provided a statutory basis for imposing liability on the owner. The

First Department reversed and dismissed the complaint holding that there was no negligence

which could be imputed to the owner because the claim against the co-worker was barred. In

*Rose*, similarly, the Second Department affirmed summary judgment in favor a vehicle owner

under §388 explaining: "Since [employer] is immune from suit under the Workers'

Compensation Law, there can be no liability imputed to Gelco as owner of the van." *Rose*, 688

N.Y.S.2d at 260 (citations omitted). In summary, where a statute, in this case a statute of

limitations, bars the claims asserted by plaintiffs against Bell, plaintiff's claims against the Freeman defendants premised on their vicarious liability for Bell's acts similarly are barred.

B.   As a Matter of Law Plaintiffs May Not Pursue Claims for Negligent Training and Supervision of Bell Where The Underlying Liability Claim is for Respondeat Superior Liability

Because, at its core, plaintiffs' claims against the Freeman defendants are based on vicarious liability for the allegedly negligent forklift operation by Jerome Bell, as a matter of law, plaintiffs may not pursue liability under negligent training or negligent supervision theories. It is well established under New York law where an employee or agent is acting within the scope of his or her employment or agency, plaintiff's remedy, if any, against the employer or principal is based on respondeat superior, and no claim may be asserted for negligent hiring, training, retention, or supervision. *Lee v. J. B. Hunt Transport, Inc.* 308 F. Supp.2d 310, 312 (E.D.N.Y. 2004); *Murns v. City of New York*, 2001 W.L. 515201 at *5 (S.D.N.Y. May 15, 2001) (DLC) (granting portion of motion to dismiss under Rule 12(b)(6) claims of negligent hiring and supervision); *Bush v. Eifert*, 27 A.D.2d 950, 279 N.Y.S.2d 368, 370 (2d Dep't 1967), *aff'd*, 22 N.Y.2d 681, 291 N.Y.S. 372 (1968); *Karoon v. New York City Tr. Auth.*, 241 A.D.2d 323, 324, 659 N.Y.S.2d 27 (1st Dep't 1997); *Rosetti v. Bd. of Ed. of Schalmont Central School Dist.,* 277 A.D.2d 668, 716 N.Y.S.2d 460, 461-2 (3d Dep't 2000); *Liddell v. Slocum-Dickson Medical Group, P.C.*, 273 A.D.2d 924, 710 N.Y.S.2d 278 (4th Dept. 2000). "[L]iability for negligent hiring, retention, training or supervision typically arises only when an employee acts outside the scope of his employment and vicarious liability cannot obtain." *Marotta v. Palm Management Corp.*, 2009 WL 497568 at *4 (S.D.N.Y. Feb. 25, 2009). In *Marotta*, Judge Swain dismissed such claims noting that plaintiff had "not sufficiently pleaded a cause of action for negligent

hiring, retention, training or supervision, because Plaintiff has not pleaded that the actions (or

negligent omissions) giving rise to the claim occurred outside the scope of the employees' duties

as such." *Id.* (citing *Higazy v. Millenium Hotel and Resorts*, 346 F. Supp. 2d 430, 454 (S.D.N.Y.

2004), *rev'd on other grounds, Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007).[7]

      The rationale for this rule was explained by Judge Sand in *Lee v. J. B. Hunt*

*Transport, Inc. supra*, where the court granted partial summary judgment dismissing claims

against the employer of a truck driver involved in an accident with the vehicle in which

plaintiff's decedent was a passenger. Plaintiff sued the operator of both vehicles for negligence

in the operation of the vehicles, and the owner of the truck for negligent hiring, training,

supervision and retention of the driver of a truck. Judge Sand explained:

> Under New York law, claims for negligent hiring, supervision or retention
> are generally not permitted when the agency relationship necessary for
> *respondeat superior* is established. In *Karoon v. New York City Transit
> Authority*, 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997), the
> Supreme Court, Appellate Division (First Department) held that:
>
>> Generally, where an employee is acting within the scope of
>> his or her employment, thereby rendering the employer
>> liable for any damages caused by the employee's
>> negligence under a theory of respondeat superior, no claim
>> may proceed against the employer for negligent hiring or
>> retention. This is because if the employee was not
>> negligent, there is no basis for imposing liability on the
>> employer, and if the employee was negligent, the employer
>> must pay for the judgment regardless of the reasonableness
>> of the hiring or retention or the adequacy of the training.
>> (Citations omitted).

*Lee*, 305 F. Supp.2d at 311. (quotation in original).

---

[7] The negligent supervision and training claims also must be dismissed because "a necessary element of such causes of action is that the employee knew or should have known of the employee's propensity for the conduct which caused the injury" – an allegation conspicuously missing from the complaint in this action. *State Farm Ins. Co. v. Central Parking Systems, Inc.*, 18 A.D.3d 859, 796 N.Y.S.2d 665, 666-7 (2d Dep't 2005).

Similarly in *Nieves v. City of Rochester*, 2011 WL 867605 (W.D.N.Y. March 10, 2011), the court, in dismissing a complaint for negligent hiring, training, supervision and retention of co-workers alleged by a firefighter to have harassed him, explained that:

> Liability on such claims typically arises only where an employee has engaged in conduct *outside* the scope of his employment, such that the employer could not otherwise be held vicariously liable, and liability is instead premised upon the employer's failure to act on a known risk concerning conduct outside of an employee's duties. *See Marotta v. Palm Mgmt. Corp.*, 2009 U.S. Dist. LEXIS 15476 at *11-* 12 (S.D.N.Y. 2009) ("liability for negligent hiring, retention, training or supervision typically arises only when an employee acts outside of the scope of his employment and vicarious liability cannot obtain ... [f]or example, the employer could be held liable if it had knowledge of an employee's violent propensities and did not take steps to prevent those propensities from harming the public"); *LaFontaine v. City of New York*, 2009 U.S. Dist. LEXIS 105838 at *34 (S.D.N.Y.2009) ("[u]nder New York law, employees' actions within the scope of their employment do not subject their employers to liability for negligent hiring, training, supervision or retention").

*Nieves,* 2011 WL 867605 at *4.

The fact that plaintiffs' *respondeat superior* claims were extinguished when they let the statute of limitations against Mr. Bell expire without commencing an action does not change the fact that Freeman's alleged exposure would be premised on Mr. Bell's alleged negligence within the scope of his duties for Freeman. Under these circumstances, Freeman's potential liability to plaintiffs arises under *respondeat superior*, and plaintiffs, as a matter of law, are barred from suing Freeman for allegedly negligent training or supervision of Mr. Bell.

II.    TIA's CROSS-CLAIM FOR FAILURE TO PROCURE INSURANCE FOR ITS BENEFIT AND ITS CONTRACTUAL INDEMNIFICATION CLAIM AGAINST FDC MUST BE DISMISSED BECAUSE THE FDS-TIA CONTRACT DOES NOT IMPOSE SUCH REQUIREMENTS, AND TIA HAS NO CONTRACT WITH FDC

TIA's answer asserts three cross-claims against the Freeman defendants. Its cross-claim for common law contribution/indemnification/apportionment must be dismissed for the same reasons which require dismissal of plaintiffs' claims against FDS and FDC. (See Point

IV, *infra*). TIA's other cross-claims are contractually based. At paragraph 105, TIA asserts a claim for contractual indemnification. At paragraphs 108 through 111, TIA asserts that the Freeman defendants were required to procure insurance for the benefit of TIA, and that they failed to procure such insurance. FDC seeks dismissal of all contractually-based claims because TIA's contract was only with FDS, and not FDC. FDS seeks dismissal of the insurance procurement claim because TIA has failed to allege the terms of the provisions sued upon, and the insurance provision did **not** require FDS to procure insurance naming TIA as an additional insured. *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154 (S.D.N.Y. 1988); *In re Argo Communications Corp.*, 134 B.R. 776 (Br. S.D.N.Y. 1991); *Griffin Brothers, Inc. v. Yatto*, 68 A.D.2d 1009, 415 N.Y.S.2d 114, 115 (3d Dep't 1979) ("plaintiff is required to plead the provisions of the contract upon which the claim is based."); *Lupinski v. Village of Ilion*, 59 A.D.2d 1050, 399 N.Y.S.2d 956 (4th Dep't 1977); *cf. Marquart-Glenn Corp. v. Lumelite Corp.*, 111 F.R.D. 175 (S.D.N.Y. 1951) (directing plaintiff to provide a copy of the contract sued upon under Fed. R. Civ. P. 12(e) prior to requiring defendant to answer).

TIA's failure to attach the contract, or quote the insurance provision is not surprising because the language of that provision is fatal to their cross-claim. The Insurance provision in the contract between FDS and TIA *in its entirety* reads: "Freeman carries adequate liability and other insurance. A certificate of insurance will be provided upon request." (Tisman Aff. Exh. 3). Conspicuously missing from this provision is any requirement that Freeman procure insurance which provides coverage to TIA. The absence of such requirement is fatal to the insurance procurement claim, and requires dismissal of this cross-claim. As noted above, on a motion to dismiss the court may consider the contents of any documents attached to the complaint or incorporated therein by reference, matters as to which judicial notice may be taken,

-14-

and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. The Freeman defendants, accordingly, ask the Court to consider the insurance provision of TIA/FDS contract (Tisman Aff. Exh. 2) which plainly does not require FDS or FDC to procure insurance for TIA's benefit.

Where, as here, the terms of a contract are clear and unambiguous, they should be construed in accordance with their plain and ordinary meaning. *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458, 775 N.Y.S.2d 757, 761 (2004); *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 569 (2002). The court must decide in the first instance whether the agreement is ambiguous, and may consider extrinsic evidence of the parties' intent only if it finds an ambiguity. *Greenfield, supra; W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440 (1990). Where, as here, the "parties set down there agreement in a clear, complete document, their writing should . . . be enforced according to its terms." *Vermont Teddy Bear Co, Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 773 N.Y.S.2d 765, 767 (2004 (quoting *Giancontieri*).

Here there is no ambiguity – the insurance provision of the contract between FDS and TIA requires Freeman to carry adequate insurance, but ***does not*** require either FDS or FDC to procure coverage for TIA. Accordingly, the Freeman defendants are entitled to dismissal of TIA's failure to procure insurance cross-claim.

FDC, also is entitled to dismissal of both TIA's contractually-based indemnification and its insurance cross claims of TIA because it has no contract with TIA, and did not undertake such obligations. "Before [a] defendant may be held accountable for the breach of a contract, it must be demonstrated that he was a party thereto." *Mellencamp*, 698 F. Supp at 1160 (quoting *Statton Group, Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y.

1978)). The well established elements of a breach of contract claim are i) the existence of a contract; ii) performance by plaintiff; iii) breach by defendant; and iv) damages. Each element must be established in order for a breach of contract claim to be actionable. *Precise-Marketing Corp. v. Simpson Paper Co.*, 1996 WL 285364 (S.D.N.Y. May 30, 1996); *Furia v. Furia*, 116 A.D.2d 694, 498 N.Y.S.2d 12, 13 (2d Dep't 1986). Here, however, TIA has no contract with FDC. Consequently, TIA cannot properly allege or establish these elements. FDC, therefore, is entitled to dismissal of TIA's contractually based cross claims at the pleading stage.

III.   MRS. HAMMOND'S LOSS OF CONSORTIUM CLAIM MUST BE DISMISSED BECAUSE HER HUSBAND'S PERSONAL INJURY ACTION IS LEGALLY INSUFFICIENT

The complaint asserts a claim for loss of consortium on behalf of Suzanne Hammond. Under New York law, a claim for loss of consortium is a derivative action which does not exist independent of the injured spouse's right to maintain an action for injuries. *Liff v. Schildkrout*, 49 N.Y.2d 622, 427 N.Y.S.2d 746 (1980); *Giannola v. Shepard Exposition Services*, Index No. 102463/2004 (Sup. Ct. N.Y. Co. *Slip Op.* p. 10 Apr. 4, 2007). Thus, dismissal of Mr. Hammond's claims against the Freeman defendants also requires summary dismissal of his wife Suzanne's derivative loss of consortium/society claims. *Gould v. Dan's Supreme Supermarket, Inc.*, 154 A.D.2d 509, 546 N.Y.S.2d 379 (2d Dep't 1989) (dismissing loss of consortium claim where underlying personal injury claim was barred by statute of limitations); *Rothfarb v. Brookdate Hospital*, 139 A.D.2d 720, 527 N.Y.S.2d 473 (2d Dep't 1998) (loss of underlying claim requires dismissal); *Cody v. Village of Lake George*, 177 A.D.2d 921, 576 N.Y.S.2d 912 (3d Dep't 1991) (same); *Evans v. Visual Technology, Inc.*, 953 F. Supp. 453 (N.D.N.Y. 1997) (applying New York law). As explained in *Cody*:

> the derivative action has no existence separate and distinct from plaintiff's claim. Both in a literal and legal sense [spouse's] claim is derivative from

-16-

the injuries sustained by plaintiff. Termination of plaintiff's action bars the [spouse's] derivative claim. *Cody*, 576 N.Y.S.2d at 913.

Because Mr. Hammond's claims against the Freeman defendants are legally insufficient, this court also must dismiss the derivative loss of consortium/society claims of his wife.

IV.   ALL COMMON LAW CROSS-CLAIMS AGAINST FDS and FDC MUST BE DISMISSED

TIA has asserted cross-claims for common law contribution, indemnity and apportionment. The same reasons which compel summary dismissal of plaintiffs' claims require summary judgment dismissing the common-law cross-claims. *Stone v. Williams*, 64 N.Y.2d 639, 642, 485 N.Y.S.2d 42 (1984); *Tapinekis v. Rivington House Health Care Facility*, 17 A.D.3d 572, 793 N.Y.S.2d 484 (2d Dep't 2005); *Giannola, supra, slip op.* at p. 10.

## CONCLUSION

For the foregoing reasons, the complaint fails to state a claim for relief against FDS and FDC. Therefore, the complaint, and all common-law cross claims for contribution, indemnification and apportionment, and the derivative loss of consortium claim, must be dismissed. TIA's contractually-based cross-claims against FDC must be dismissed in their entirety because there is no contract between FDC and TIA. Its cross-claim against FDS for failure to procure insurance for the benefit of TIA must be dismissed because no such obligation

exists under the contract between TIA and FDS.  Under these circumstances, the Freeman

defendants' motion should be granted.

Dated: Uniondale, NY
      August 15, 2011

                        FORCHELLI, CURTO, DEEGAN, SCHWARTZ,
                        MINEO, COHN & TERRANA, LLP

                        By: _____
                          Russell G. Tisman, Esq. (RT 1710)
                        333 Earle Ovington Boulevard - Suite 1010
                        Uniondale, New York 11553
                        (516) 248-1700

                        Attorneys for Defendants
                        Freeman Decorating Services, Inc. and
                        Freeman Decorating Co.

To:    Brown & Gropper, LLP
       Attorneys for Plaintiffs
       275 Seventh Avenue - 25th Floor
       New York, New York  10001
       (212) 366-4600

       Perez & Varvaro
       Attorneys for Defendant
       Toy Industry Association, Inc.
       333 Earle Ovington Boulevard - 8th Floor
       Uniondale, New York  11553
       (516) 745-8310

       Law Office of Edward Garfinkel
       Attorneys for Defendant
       New York Convention Center Development Corp.
       and Jerome Bell
       12 Metrotech Center
       28th Floor
       Brooklyn, New York  11201-3837
       (718) 250-1100

# APPENDIX

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

JANE S. SOLOMON

PART 55

PRESENT: _____
Justice

| | |
|---|---|
| Index Number : 102463/2004 | INDEX NO. |
| GIANNOLA, SALVATORE | MOTION DATE 2/5/2007 |
| vs | MOTION SEQ. NO. |
| SHEPARD EXPOSITION SERVICES | MOTION CAL. NO. |
| Sequence Number : 004 | |
| SUMMARY JUDGMENT | |

is motion to/for Summary Judgment

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 1 - 8 |
| Answering Affidavits — Exhibits | 9 - 18 |
| Replying Affidavits | 19 - 25 |

Cross-Motion: ☑ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion    is decided in
accordance with the annexed memorandum decision
and order.

FILED

COUNTY CLERKS OFFICE NEW YORK

Dated: 4/1/07

JANE S. SOLOMON J.S.C.

Check one: ☑ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

☐ DO NOT POST    ☑ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 55
-------------------------------------X
SALVATORE GIANNOLA and MARIA GIANNOLA

                    Plaintiffs,

                                          INDEX NO. 102463/04

          -against-
                                          DECISION and ORDER

FREEMAN DECORATING COMPANY, SHEPARD
EXPOSITION SERVICES, INC., and
PFINGSTEN PUBLISHING, LLC,

                    Defendants.
-------------------------------------X
JANE S. SOLOMON, J.

          In this personal injury action, defendant Freeman

Decorating Company ("Freeman") moves for summary judgment

dismissing the Complaint and all cross-claims against it.

Defendants Pfingsten Publishing, LLC ("Pfingsten") and Shepard

Exposition Services, Inc. ("Shepard") separately cross-move for

summary judgment dismissing the Complaint and all cross-claims

against them.  Plaintiffs Salvatore Giannola ("Giannola") and

Maria Giannola (collectively, "Plaintiffs") cross-move for

summary judgment against all defendants, or alternatively to

supplement their Bill of Particulars and to conduct additional

discovery.  For the reasons described herein, Freeman's motion

and Pfingsten and Shepard's cross-motions, are granted, and

Plaintiffs' cross-motion is denied.

<u>Background</u>

The New York Convention Center Development Corp. ("NYCCDC") is the owner of the Jacob K. Javits Convention Center ("Javits Center") in Manhattan. Plaintiff Giannola is employed by the New York Convention Center Operating Corp. ("NYCCOC"), which is the employer and exclusive source for carpenter and teamster labor for shows at the Javits Center. When a contractor procures carpenters from NYCCOC in connection with a trade show, NYCCOC directs the carpenters to report to the Javits Center's labor hall to sign in. A carpenter is assigned to only one contractor for a specific day. NYCCOC prepares, and has waiting for each carpenter, a time card which has preprinted on it the date, the carpenter's name, and the contractor to which the carpenter has been assigned.

Defendant Pfingsten sponsored a trade show named the Décor Show at the Javits Center. The Décor Show ran from February 28 through March 3, 2003, and was preceded by a three day move in and set up period. Pfingsten hired defendant Shepard as its official trade show contractor for the event, and Shepard coordinated the move in and set up period.

Defendant Freeman was hired by a few exhibitors to assist them in connection with the set-up of their exhibit booths for the Décor Show. Freeman claims that it obtained three

2

NYCCOC-employed carpenters to provide services to these specific exhibitors on February 25 and February 26, 2003, but that it did not work on the Décor Show any other day.

Giannola's deposition testimony and affidavit are somewhat inconsistent, but he claims that when he arrived to work at the Javits Center on February 27, 2003, at approximately 8:00 AM, a supervisor from Freeman (rather than someone from NYCCOC) provided him with a time card and assigned him to work for Shepard. Freeman denies this allegation. Giannola's February 27, 2003 time card and an NYCCOC injury investigation report ("Injury Report") dated the same day support the contention that Giannola was assigned to Shepard on that date.

Giannola states that he was sent by Freeman to Shepard to hang a 60-80 pound temporary banner at a booth. Working with him was a female carpenter who was about 5 feet tall. He claims that they were climbing separate, unsecured six-foot A-frame ladders, and that his ladder was yellow and labeled with the name "Freeman".[1] Giannola is unsure if the banner was to be hung from the ceiling of the Javits Center, or from something else. Giannola claims that while he and the co-worker were raising the

---

[1] Freeman argues that the ladder could not have been its because Giannola was working for Shepard, contractors only use their own tools and equipment, and moreover, it only used orange colored ladders at the Javits Center.

3

banner, she lost her grip, and that the banner and ladders moved, causing them both to fall to the ground.  Giannola required surgery for his injuries and has been unable to work.  According to the Injury Report, Giannola stated that "he did not have a good grip on the rung and he fell backwards onto the small of his back," and he fell due to lack of "attention to the task at the moment."

In February 2004, Plaintiffs commenced this action against NYCCDC, Greyhound Exposition Services Inc. ("Greyhound"), Precision Trade Show Services, Inc. ("Precision"), and Freeman, in which Giannola asserts common law negligence claims and seeks damages under New York Labor Law §§ 200, 240 and 241, and unspecified OSHA and Industrial Code regulations.  In his Bill of Particulars, Giannola identified NYCRR §§ 23-1.5(a)(b) and (c)(2) as the only Industrial Code sections allegedly violated.  (His wife has a derivative claim.)

NYCCDC and Precision were granted summary judgment on October 19, 2004 and May 16, 2005, respectively.  Following depositions of Plaintiffs and of Freeman's General Manager William Kuehnle, Plaintiffs stipulated to remove Greyhound as a defendant.  On or about October 27, 2005, they filed an Amended Summons and Complaint adding Pfingsten and Shepard as defendants. The defendants cross-claimed against each other for common law

4

contribution, indemnity and apportionment.  Under Motion Sequence 003, on October 30, 2006 this Court ordered Plaintiffs to file their Notice of Issue within 30 days, and set December 31, 2006 as a deadline for all parties to file dispositive motions. Freeman now moves, and Shepard and Pfingsten each separately cross-move, for summary judgment dismissing the Complaint and all cross-claims against them.  Plaintiffs cross-move for summary judgment, or in the alternative for a continuance pursuant to CPLR § 3212(f), leave to supplement their Bill of Particulars and leave to depose Pfingsten and Shepard.

<u>Discussion</u>

## Freeman's Motion for Summary Judgment on Giannola's Claims

Giannola claims negligence against Freeman under both the common law and Labor Law § 200.  Labor Law § 200 codifies the common law duty of an owner or contractor to provide employees with a safe place to work.  <u>Jock v. Fien</u>, 80 N.Y.2d 965 (1992). To succeed on his Labor Law § 200 claim against Freeman, Giannola must show that Freeman exercised actual supervision or control over the work that resulted in his injury.  <u>Gonzales v. United Parcel Service</u>, 249 A.D.2d 210 (1st Dep't 1998).  To succeed on his common law negligence claim, Giannola must show (1) the existence of a duty on Freeman's part; (2) a breach of that duty;

and (3) that he was injured as a result.  _Alfaro v. Wal-Mart Stores, Inc._, 210 F.3d 111, 114 (2d Cir. 2000).

Accepting all of Giannola's claims as true, Freeman assigned him to work under Shepard and Giannola used Freeman's ladder.  There is no allegation that Freeman supervised his work or that the ladder used was defective.  Thus, Freeman was not in a position to control or supervise Giannola's work, and therefore it did not owe him a duty that would support a negligence claim.  See _Hamilton v. Beretta U.S.A. Corp._, 96 N.Y.2d 222 (2001).  Accordingly, that part of Freeman's motion seeking to dismiss the common law negligence and Labor Law § 200 claims against it is granted.

Giannola also brings claims under Labor Law §§ 240 and 241.  Labor Law § 240 was designed to prevent those types of accidents in which a scaffold, ladder, or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person, by placing ultimate responsibility for work site safety practice on the owner or general contractor.  _Ross v. Curtis-Palmer Hydro-Elec. Co._, 81 N.Y.2d 494 (1993).  In order to come within the protection of Labor Law § 240(1), an employee must be engaged in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure.  To

6

come under the protection of Labor Law § 241(6), the employee must be engaged in construction, demolition or excavation work. Giannola alleges that he was injured while hanging a banner at one of the exhibit booths at the Décor Show.  This does not fall within the protective shield of either of these Labor Law provisions.  See Perchinsky v. State, 232 A.D.2d 34 (3rd Dep't 1997); Esposito v N.Y.C. Indus. Dev. Agency, 1 N.Y.3d 526 (2003).

Moreover, even if Giannola's activities were protected under the Labor Law, his Labor Law claims would have to be dismissed as against Freeman because Freeman was not an owner or general contractor. It is undisputed that NYCCDC is the owner of the Javits Center, and that Giannola was being supervised by Shepard at the time of Giannola's accident. Even accepting Giannola's claim that, contrary to Javits Center practice, a supervisor from Freeman (instead of NYCCOC) assigned him to Shepard, Shepard was the contractor for the Décor Show.

In addition, in order to sustain a claim under Labor Law § 241(6), Giannola must show an Industrial Code violation that sets forth a specific positive command or a concrete specification.  Ross v. Curtis-Palmer Hydro-Electic Co., 81 N.Y.2d at 501-05.  Giannola's Bill of Particulars identifies 12 NYCRR § 23-1.5(a), (b) and (c)(2) as the sections violated by Freeman (and the other defendants).  As a matter of law, these

7

sections merely establish a general safety standard that does not give rise to the non-delegable duty imposed by Labor Law § 241(6). <u>Meslin v. New York Post</u>, 30 A.D.3d 309 (1st Dep't 2006); <u>Maldonado v. Townsend Ave. Enters., Ltd. P'ship</u>, 294 A.D.2d 207 (1st Dep't 2002). Accordingly, that part of Freeman's motion seeking to dismiss Giannola's claims under Labor Law §§ 241(6) and 240(1) is granted.

**Pfingsten's Cross-Motion for Summary Judgment on Giannola's Claims**

Pfingsten was the organizer of the Décor Show and hired Shepard as its official contractor for the event. Giannola's timecard, labor procedures for the Javits Center and Giannola's own statements all indicate that he was employed by NYCCOC and assigned to work for Shepard. Moreover, there is no evidence that Pfingsten, the trade show organizer, exercised any actual control or supervision over Giannola's work or that it had the ability to determine the manner in which he did his job. Therefore, Pfingsten's motion for summary judgment dismissing the common law negligence and Labor Law § 200 claims against it is granted.

As discussed above under Freeman's motion, summary judgment also is granted dismissing Giannola's Labor Law §§ 240 and 241 claims against Pfingsten because Giannola's work does not fall under the activities protected under those sections. In

8

addition, as trade show organizer, Pfingsten does not fall under the sections which impose strict liability on the owner and general contractor. Accordingly, Pfingsten's motion for summary judgment dismissing Giannola's claims against it is granted.

**Shepard's Cross-Motion for Summary Judgment on Giannola's Claims**

Shepard argues that it was Giannola's "special employer," and that it is thus entitled to summary judgment as Giannola's sole remedy is worker's compensation, of which Giannola has already availed himself. A special employee is one who is transferred for a limited duration to the service of another. Thompson v. Grumman Aerospace Corp., 78 A.D.2d 553 (2d Dep't 1991). Under the exclusive remedy provision of the Worker's Compensation Law, an employee is barred from bringing a negligence action against the special employer, even though the general employer is responsible for paychecks and benefits. Id.

It is undisputed and acknowledged by all parties that at the time of his accident, Giannola was temporarily assigned by his employer NYCCOC, to work on behalf of Shepard for setting up at the Décor Show, and Giannola was under Shepard's direction during his accident. This is supported by Giannola's own deposition testimony as well as his timecard. Thus, Giannola was assigned to, and worked for, Shepard at the time of his accident, and was Shepard's special employee. Accordingly, worker's

9

compensation is Giannola's exclusive remedy against Shepard, and Shepard's summary judgment motion is granted.

## Marie Giannola's Claims Against All Defendants

Marie Giannola's claims are for loss of her husbands's society, companionship and services. Under New York law, a claim for loss of consortium is a derivative action which cannot exist independent of the injured spouse's right to maintain an action for injuries. Liff v. Schildkrout, 49 N.Y.2d 622 (1980). Because all three defendants have been granted summary judgment dismissing Giannola's claims, his wife's claims must also be dismissed.

## Defendants' Cross-Claims

Defendants' cross-claims against each other are for common law contribution, indemnity and apportionment. As a consequence of summary judgment having been granted to all three defendants to dismiss Plaintiffs' claims against them, these cross-claims similarly are dismissed. See Stone v. Williams, 64 N.Y.2d 639 (1984).

## Plaintiffs' Cross-Motion

In light of the foregoing, Plaintiffs' cross-motion for summary judgment and for leave to supplement their Bill of Particulars and re-open discovery is denied. Plaintiffs argue that Pfingsten did not appear for its deposition in June 2006, so

10

the court should either deny defendants' motions or order a
continuance to permit that deposition now.   CPLR 3212(f).
However, Plaintiffs offer no explanation for how that deposition
might result in the discovery of evidence that might justify
Plaintiffs' opposition, resuscitate their inability to make out a
prima facie case of liability against any other party, or even
help Plaintiffs to articulate a theory under which Pfingsten is
liable.   Id.   That branch of the cross-motion seeking to amend
the Bill of Particulars is denied as moot.

Accordingly, it hereby is

ORDERED that Freeman's motion is granted, Pfingsten
and Shepard's cross-motions are granted, Plaintiffs' cross-motion
is denied, the Complaint and all cross-claims are dismissed and
the Clerk of the Court is directed to enter judgment accordingly,
with costs and disbursements to defendants as taxed.

Dated: April 4, 2007

ENTER:

J.S.C.

11