**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**Richard Hammond et al.,**

                    **Plaintiffs,**

          **- against -**

**Toy Industry Association, Inc. et al.,**

                    **Defendants.**

11 Civ. 3179 (JGK)

<u>OPINION AND ORDER</u>

---

**JOHN G. KOELTL, District Judge:**

     The plaintiffs, Richard Hammond and his wife, Suzanne Hammond, brought this action to recover damages arising out of injuries that Mr. Hammond sustained on February 17, 2010 at the Jacob K. Javits Convention Center ("Javits Center") in New York City.  At the time of the incident, Mr. Hammond was employed by Mahar Manufacturing Corporation d/b/a Fiesta ("Fiesta") and worked at a trade show at the Javits Center in which Fiesta participated.  The action is currently pending against the following defendants: Toy Industry Association, Inc. ("TIA"), the organizer of the trade show; Freeman Decorating Services, Inc. ("Freeman"), the contractor hired by TIA to provide services to the trade show; and Jerome Bell, a forklift operator working at the Javits Center who allegedly injured Mr. Hammond. Also pending before the Court are TIA's third-party claims against Fiesta and cross-claims against Freeman for indemnification, as well as Freeman's cross-claims against Bell

for indemnification.  CompWest Insurance Company ("CompWest"), the worker's compensation insurance carrier for Fiesta, intervened as a plaintiff.

This action was removed from the New York State Supreme Court, New York County.  This Court has subject matter jurisdiction based on complete diversity of citizenship between the plaintiffs and the defendants and the requisite jurisdictional amount.  See 28 U.S.C. § 1332.  The propriety of removal is undisputed.  With respect to the cross-claims and third-party claims among Bell, Fiesta, Freeman, and TIA, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) wherever diversity jurisdiction does not exist.

The defendants, third-party defendant, and cross-claim defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56.


## I.

The standard for granting summary judgment is well established.  "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's

task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them. Its duty, in
short, is confined at this point to issue-finding; it does not
extend to issue-resolution." Gallo, 22 F.3d at 1224.  The
moving party bears the initial burden of "informing the district
court of the basis for its motion" and identifying the matter
that "it believes demonstrate[s] the absence of a genuine issue
of material fact." Celotex, 477 U.S. at 323.  The substantive
law governing the case will identify those facts that are
material and "[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly
preclude the entry of summary judgment." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).

     In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986)
(citing United States v. Diebold, Inc., 369 U.S. 654, 655
(1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is
improper if there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the
nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d
29, 37 (2d Cir. 1994).  If the moving party meets its burden,

the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## II.

The following facts are undisputed for purposes of this motion, unless otherwise indicated.

## A.

In February 2010, TIA held a trade show, the American International Toy Fair (the "Toy Fair"), at the Javits Center in New York City.  Fiesta, Mr. Hammond's employer, rented and occupied a booth at the Toy Fair, where Mr. Hammond worked.  On February 17, 2010, after the Toy Fair ended, Mr. Hammond was injured while the exhibition hall was being cleaned and while Mr. Hammond was putting away toys that had been exhibited in Fiesta's booth.  Mr. Hammond was struck and injured by a plastic crate (known as a "fiber") that tipped from a forklift operated by a two-man crew consisting of defendant Bell and non-party Kendall Marshall.

The causes of the accident are disputed.  There is some evidence that the fiber fell off the forklift because either the

4

fiber or the forklift struck an aisle carpet that was rolled up
and placed on the side of the aisle.  (Varvaro Decl. Ex. O (Bell
Dep.) at 64, 130; Varvaro Decl. Ex. L (Hammond Dep.) at 227-28.)
Pat Cummings, a Freeman supervisor, was responsible for
instructing laborers to roll up the carpets and leave them on
the sides of the aisles.  (Varvaro Decl. Ex. N (Cummings Dep.)
at 117-19.)  Another Freeman supervisor, Haynes Charles,
observed the loading of forklifts and had the authority to stop
the forklift operators if he deemed the loading to be unsafe.
(Cummings Dep. at 58-59.)  In addition, Mr. Hammond testified
that some of Fiesta's boxes were in the aisle at the time of the
accident and that Mr. Hammond was putting Fiesta's toys into
those cartons, (Hammond Dep. at 55-56), but it is unclear
whether Fiesta's cartons were involved in the accident.
Marshall claims to have spoken with Mr. Hammond regarding the
obstructions in the aisle after Mr. Hammond left the booth and
suddenly entered the aisle.  (Marshall Dep. at 55-60.)  On the
other hand, Mr. Hammond testified that he was working inside the
booth at the time of the accident and that he was struck shortly
after hearing some brief "yell[ing]."  (Hammond Dep. at 53, 55,
60-61.)  Factual disputes exist as to the location of various
persons and objects as well as the precise sequence of events.

**B.**

To host the Toy Fair, TIA licensed the exhibition halls at the Javits Center from the New York Convention Center Operating Corporation ("NYCCOC"), a public benefit corporation statutorily created by the State of New York and charged with operating the Javits Center.  N.Y. Pub. Auth. Law §§ 2560-61; (Varvaro Decl. Ex. I, Feb. 10, 2006 Revised Agreement at 3).  TIA hired Freeman as the general services contractor of the Toy Fair.  (See generally Varvaro Decl. Ex. J.)  Freeman installed carpeting in the aisles, and arranged for and directed delivery of the exhibitors' belongings to and from the exhibit halls; forklifts were used to transport and deliver the fibers holding these belongings.  (Varvaro Decl. Ex. J. at 13; Cummings Dep. at 7, 10-11, 28-29.)  Freeman was also responsible for breaking down the Toy Fair by rolling up the carpets and removing the exhibitors' belongings.  (Cummings Dep. at 13, 49.)

Neither Freeman nor TIA supplied the labor for these tasks. Instead, according to the license agreement between TIA and NYCCOC, NYCCOC had the "exclusive right to supply labor" to perform certain functions such as "loading, unloading[,] and moving exhibitor freight materials" except the hand-carry items, and "crating and recrating, and all work involved in the erection and dismantling of exhibits, displays, backgrounds[,] and booths."  (Varvarco Decl. Ex. I, Feb. 10, 2006 Revised

Agreement at 8, 14.)  TIA, its contractor Freeman, and the
exhibitors like Fiesta were not allowed to use any other labor
for these functions, but were allowed to provide their own
managers and supervisors.  (Varvarco Decl. Ex. I, Feb. 10, 2006
Revised Agreement at 8, 14.)  In order for Freeman to perform
the duties under its contract with TIA, Freeman would submit
orders to NYCCOC for laborers such as forklift operators and
carpenters, and NYCCOC would provide the laborers, who were
NYCCOC employees, to Freeman.  Freeman would pay NYCCOC for the
costs associated with using these laborers, and NYCCOC, in turn,
would pay the salaries of these laborers.

These forklift operators, carpenters, and other laborers
worked under the direction of Freeman's supervisors, who
assigned work to the laborers, educated them about work safety,
managed their schedule, and determined who would work overtime.
At the same time, NYCCOC retained the authority to discipline or
discharge these laborers.  TIA was not involved in directing or
supervising the laborers.

Defendant Bell and non-party Marshall were both forklift
operators employed by NYCCOC and assigned to work at the Toy
Fair under Freeman's direction.  On the day of the injury,
Cummings, a Freeman freight supervisor, assigned Bell the task
of moving the fibers with a forklift and assigned Marshall to
assist Bell.  Mr. Hammond's injury occurred while Bell was

moving the fibers with the forklift, assisted by Marshall.

## C.

On May 6, 2011, more than one year after the injury, Mr. and Mrs. Hammond filed suit in the New York State Supreme Court, New York County against Freeman, Freeman Decorating Company ("FDC"), the New York Convention Center Development Corporation ("NYCCDC"), and TIA. Freeman and FDC removed the action to this Court on May 11, 2011 before any defendant was served.

On March 12, 2012, the Court granted NYCCDC's motion to dismiss all claims against NYCCDC for failure to comply with the notice-of-claim requirement. The Court also denied the plaintiffs' motion for leave to amend the complaint to add NYCCOC as a defendant, in part because the claims against NYCCOC were time-barred by the one-year statute of limitations (as of 2011) applicable to suits against NYCCOC and its employees. N.Y. Pub. Auth. Law § 2570 (McKinney 2011). Meanwhile, even though defendant Bell claimed to be an employee of NYCCOC and argued that the plaintiffs' claims were also barred by the same one-year statute of limitations, the Court denied Bell's motion to dismiss because there were disputed issues of fact as to whether Bell was indeed an employee of NYCCOC. On June 26, 2012, FDC was dismissed from the case pursuant to a stipulation. The remaining defendants for the plaintiffs' claims are TIA,

Freeman, and Bell.

**D.**

The claims at issue on the current motions for summary judgment are as follows.  First, the plaintiffs assert three claims, all sounding in negligence, against defendants TIA, Freeman, and Bell.  Second, TIA asserts cross-claims for common-law and contractual indemnification against defendant Freeman, and a third-party claim for contractual indemnification against third-party defendant Fiesta, based on TIA's contracts with these parties.  TIA, in its Answer to the Complaint, also sought indemnification from Bell but has withdrawn that claim.  (Tr. of Oral Argument on Jan. 16, 2014 ("Tr.") at 25.)

In addition, Freeman seeks common-law apportionment of liability, contribution, and indemnification from Bell based on Bell's alleged negligence.  Finally, Bell has asserted cross-claims against TIA and Freeman,[1] and Fiesta has asserted cross-claims against all defendants, but the motion papers have not addressed these cross-claims of Bell and Fiesta.

---

[1] TIA represented at oral argument that Bell's cross-claims against the TIA should be dismissed because Bell's motion papers did not oppose TIA's motion for summary judgment dismissing cross-claims against TIA.  (Tr. at 55-56.)  However, nowhere in TIA's motion papers has TIA specifically addressed Bell's cross-claims.  Similarly, Freeman's papers do not address Bell's cross-claims against Freeman.  Therefore, Bell's cross-claims against TIA and Freeman are currently not at issue in these motions.

### III.

Bell moves for summary judgment dismissing the plaintiffs' claims against him on the basis that the one-year statute of limitations, which applies to actions against employees of NYCCOC, has run.  NYCCOC is a statutorily created public benefit corporation under New York law.  <u>See generally</u> N.Y. Pub. Auth. Law §§ 2560-61.  At the time this action was commenced, New York Public Authorities Law (PAL) § 2570 provided that

> [a] notice of claim, served in accordance with the provisions of section fifty-e of the general municipal law, shall be a condition precedent to the commencement of an action against [NYCCOC], its directors, officers, employees or agents.  No such action shall be commenced more than one year after it has accrued . . . .

N.Y. Pub. Auth. Law § 2570 (McKinney 2011).[2]

Bell now moves for summary judgment dismissing the plaintiffs' claims against him.  Bell argues that evidence in the record has established that he was an employee of NYCCOC at the time of the accident.  It is not disputed that this action was commenced more than one year after the accident. Accordingly, Bell contends that the plaintiffs' claims against him must be dismissed because they are time-barred.

---

[2] The statute has since been amended to provide for a statute of limitations of one year and ninety days.  N.Y. Pub. Auth. Law § 2570 (McKinney 2013); 2012 Sess. Law News of N.Y. Ch. 500 (S. 7641-B)(McKinney).

The plaintiffs argue that Bell is not protected by § 2570 because he is being sued not in his capacity as an employee of NYCCOC but as an agent or servant of Freeman.  This argument is without merit.  Under New York law, an employee who is employed by one employer (the "general employer") may be "transferred for a limited time of whatever duration to the service" of a second employer and become a "special employee" of that second employer (the "special employer").  Thompson v. Grumman Aerospace Corp., 585 N.E.2d 355, 357 (N.Y. 1991); see also Grilikhes v. Int'l Tile & Stone Show Expos, 934 N.Y.S.2d 384, 386 (App. Div. 2011).  Indeed, "[i]t is well settled that a worker may have both a general and a special employer."  O'Brien v. Garden Way Mfg., Inc., 421 N.Y.S.2d 729, 730 (App. Div. 1979).  For example, under the Workers' Compensation Law of New York, "[w]here a claimant is employed by both a general and special employer, the [Worker's Compensation] Board is empowered to 'make an award against either or both of the employers as it sees fit.'"  Carlineo v. Snelling & Snelling, LLC, 935 N.Y.S.2d 163, 165 (App. Div. 2011) (citation omitted); accord Arteaga v. ISS Quality Serv., 789 N.Y.S.2d 748, 749 (App. Div. 2005); Kemp v. City of Hornell, 672 N.Y.S.2d 537, 538 (App. Div. 1998).

Evidence in the record unequivocally establishes that Bell remained an employee of NYCCOC at all times relevant to this action.  Bell applied for employment at NYCCOC in 1995, (Weiss

11

Affirmation Ex. H), and has been employed by NYCCOC as a forklift operator since 1996, (Bell Dep. at 7-9).  Bell received his salaries from NYCCOC.  (Bell Dep. at 112-13; Weiss Affirmation Ex. G.)  Bell submitted his W-4 tax forms to and received his W-2 tax forms from NYCCOC, all of which indicated that Bell was an employee of NYCCOC.  (Weiss Affirmation Ex. H.) Prior to the beginning of each shift, NYCCOC would call in the laborers to work and direct them to Freeman.  (Bell Dep. at 22-24.)  NYCCOC retained the authority to discipline or discharge these laborers for conduct that occurred during the course of their service under Freeman.  (Dillon Dep. at 37; Long Dep. at 55-56.)  In addition, NYCCOC employed laborers like Bell for the purpose of providing them to contractors like Freeman for exhibition-related labor work.  (Dillon Dep. at 7-8.) Therefore, Bell was acting fully within the scope of his employment by NYCCOC at the time the accident occurred.

Accordingly, because Bell remained an employee of NYCCOC and was under NYCCOC's control even when he worked for Freeman, and because the accident occurred within the scope of his employment, the one-year statute of limitations under PAL § 2570 applies to bar the plaintiffs' claims against defendant Bell. Bell's motion for summary judgment dismissing all claims asserted by the plaintiffs against Bell is therefore **granted.**

IV.

Defendant Freeman moves for summary judgment dismissing the plaintiffs' claims.  Freeman initially argued that, because Bell was an employee of NYCCOC and the plaintiffs' claims against Bell are barred by PAL § 2570, Freeman cannot be held liable under the doctrine of respondeat superior.  However, Freeman has since withdrawn this argument and does not dispute that Bell was a special employee of Freeman.  (Tr. at 4; Freeman's Letter to the Ct. on Jan. 20, 2014.)  Thus, the respondeat superior claims based on Bell's acts remain against Freeman, even though the underlying claims are time-barred against Bell under PAL § 2570, which, on its face, does not apply to Freeman.  See Lyons v. MacWorld IDG World Expo, No. 03 Civ. 9047, 2007 WL 2265577, at *7 (S.D.N.Y. Aug. 6, 2007) (denying summary judgment and holding that Freeman may be liable for negligence claim arising out of the work of NYCCOC laborers under Freeman's supervision); Serwatka v. Freeman Decorating Corp., No. 00 Civ. 4097, 2001 WL 1203805, at *2, 6 (S.D.N.Y. Oct. 10, 2001) (same).

Meanwhile, the plaintiffs have withdrawn any claim against Freeman for negligent supervision.  (Tr. at 40.)  Thus, the sole issue now before this Court regarding Freeman's liability is the alleged negligence of Freeman's own supervisors, which Freeman still contests.

The plaintiffs argue that Freeman's supervisors, Haynes

13

Charles, as well as Cummings, were negligent in carrying out their own duties and that Freeman is liable for their negligence.  Specifically, the plaintiffs argue that Cummings failed to ensure that the aisles were clear of obstruction and that Charles failed to ensure that the fibers were properly loaded and secured before the forklift began to move.  There are factual issues as to whether Charles and Cummings were negligent.  Contrary to Freeman's assertion, these are not claims of negligent supervision which cannot survive because Freeman will be vicariously liable for any negligence by Bell. Rather, the claims at issue here are negligence claims alleging that Freeman's supervisors themselves engaged in negligent acts. Therefore, the plaintiffs' claims of negligence against Freeman are independently viable claims.  They cannot be dismissed on the basis that they are non-actionable claims of negligent supervision.  See Sayers v. City of New York, No. 04 Civ. 3907, 2007 WL 914581, at *9-10 (E.D.N.Y. Mar. 23, 2007) (suggesting that a claim for negligence is separate from a claim for negligent supervision and training); Morgan v. Ski Roundtop Inc., 736 N.Y.S.2d 135, 137 (App. Div. 2002) (same).

Freeman also argues in its reply brief that it cannot be held independently negligent because the actions of Freeman's supervisors were not a foreseeable or proximate cause of Mr. Hammond's injuries.  Freeman argues that Bell had moved freight

14

in the manner he did for at least fourteen years without incident and that the accident would not have occurred absent the collision of the forklift or the crate with a rolled-up carpet, which constituted an "intervening cause" that relieved Freeman of its liability.

However, Freeman did not raise these arguments in its opening brief, and arguments raised for the first time on reply are generally not considered. See, e.g., Velez v. Reynolds, 325 F. Supp. 2d 293, 317 (S.D.N.Y. 2004).[3]  In any event, these arguments raise issues of material fact that cannot be resolved on summary judgment.  To defeat liability under the intervening cause analysis, Freeman must show that Mr. Hammond's injuries were not a "normal or foreseeable consequence of the situation" created by the Freeman supervisors' purported negligence. Derdiarian v. Felix Contracting Corp., 414 N.E.2d 666, 670 (N.Y. 1980).  Drawing all factual inferences in favor of the plaintiffs, the Court cannot conclude that, as a matter of law, Mr. Hammond's injuries were not a normal or foreseeable consequence of the alleged negligence of the Freeman supervisors and thus cannot grant summary judgment on this ground.

---

[3] With respect to Freeman's liability based on acts of its own supervisors, Freeman's opening brief raised only arguments seeking summary judgment dismissing claims for negligent supervision and control.  (Freeman's Mem. of Law in Supp. of Mot. Summ. J. at 15-20.)  These claims have been withdrawn. Therefore, there is no proper basis to raise on reply the argument based on intervening cause.

Therefore, because Freeman may be liable for acts of both Bell and Freeman's supervisors, Freeman's motion for summary judgment dismissing the plaintiffs' negligence claims[4] is **denied**. However, the plaintiffs' negligent supervision claim against Freeman is **dismissed**.

## V.

Defendant TIA moves for summary judgment dismissing the plaintiffs' claims against TIA on the basis that TIA did not direct or supervise the work of Bell and Marshall.  The plaintiffs do not dispute this fact.  However, the plaintiffs argue that claims against the TIA cannot be dismissed because TIA had a nondelegable duty to maintain safe premises and can be held liable on the theory of premises liability.  Under New York law, owners of premises open to the general public "are charged with a nondelegable duty to provide members of the general public with . . . reasonably safe premises, including a safe means of ingress and egress."  Backiel v. Citibank, N.A., 751 N.Y.S.2d 492, 495 (App. Div. 2002).

TIA was not an "owner" of the Javits Center.  Even though

---

[4] These claims include the loss of consortium claim by Mrs. Hammond, as to which Freeman moves for summary judgment on the sole ground that such a claim is not viable in the absence of primary claims by Mr. Hammond against Freeman.  However, because these primary claims (except the negligent supervision claim) now remain, Freeman's motion for summary judgment on the loss of consortium claim must also be denied.

16

the word "owner" is sometimes read to encompass the owner of any "store or other place of public assembly," see Atkinson v. Golub Corp. Co., 718 N.Y.S.2d 546, 548 (App. Div. 2000), or of a business on the premises, see Thomassen v. J & K Diner, Inc., 549 N.Y.S.2d 416, 416 (App. Div. 1989), the nondelegable duty of maintaining safe premises is imposed on the owner ultimately "because the owner in possession has retained control over the premises." Backiel, 751 N.Y.S.2d at 495. Thus, if a party has a mere license to use the premises and is vested with only the "authority to do a particular act or series of acts upon the licensor's land," premises liability may not be imposed unless the party maintains or controls the premises in question. See Gibbs v. Port Auth. of N.Y., 794 N.Y.S.2d 320, 322 (App. Div. 2005).[5] For example, in Gibbs, a licensee had a license to shoot a TV commercial on the premises and did not maintain or control the premises; accordingly, the court held that the nondelegable duty could not be imposed on this licensee. Id.

---

[5] Indeed, no persuasive authority under New York law holds that this nondelegable duty of a property owner can be imposed on a party that licensed a space to host an event and did not commit any tortious act on its own. The plaintiffs rely on an unpublished trial court order, Kushner v. N.Y. Convention Ctr. Dev. Corp., 2010 N.Y. Misc. LEXIS 2783, at *5 (Sup. Ct. June 15, 2010), in which the court imposed the nondelegable duty on an entity that licensed a space at the Javits Center to host an event; however, the case cited no authority specifically supporting that extension. The only case cited by the Kushner court, Backiel, 751 N.Y.S.2d 492, concerned the nondelegable duty of the owner--not a licensee--of an office building to maintain safe premises.

17

The plaintiffs argue that Gibbs is distinguishable because, in this case, NYCCOC granted TIA the right of passage and "free access" to the space at the Javits Center. (See Varvaro Decl. Ex. I, Feb. 10, 2006 Revised Agreement ¶¶ 1.A, 24.) However, that evidence neither establishes TIA's control over the premises nor renders Gibbs distinguishable. Both Gibbs and the present case involve a license to use the premises. A license is "a personal, revocable, and nonassignable privilege, conferred either by writing or parol, to do one or more acts upon land, without possessing any interest therein." Greenwood Lake & P.J.R. Co. v. N.Y. & G.L.R. Co., 31 N.E. 874, 875 (N.Y. 1892). Therefore, a license, by its definition, contains the right of passage and access to the premises. Thus, the fact that TIA had such a right does not distinguish the present case from Gibbs, in which the defendant also had a license to use the premises but was not found to have maintained or controlled the premises. The plaintiffs' argument in this case is further weakened by the fact that, under the contract between NYCCOC and TIA, just as was the case in Gibbs, NYCCOC, the "licensor," explicitly retained the duty of maintenance and repair. (Varvaro Decl. Ex. I, Feb. 10, 2006 Revised Agreement ¶ 22.)

Hence, the plaintiffs have failed to present evidence showing that TIA owned, maintained, or controlled the space to justify imposing on TIA the nondelegable duty of the owner of

premises.  See <u>Lyons</u>, 2007 WL 2265577, at *5 (holding that the decoration contractor, Freeman, was not subject to premises liability because it did not "occupy, own, control or make special use" of the premises at the Javits Center).  Because the plaintiffs have not proffered any other ground on which TIA can be held liable, such as the independent negligence of TIA, the plaintiffs' claims against TIA fail as a matter of law. Accordingly, TIA's motion for summary judgment dismissing the plaintiffs' claims against TIA is **granted**.

**VI.**

TIA and Freeman have asserted various indemnification claims against other parties: TIA seeks indemnification from Fiesta, the employer of Mr. Hammond and an exhibitor at the Toy Fair, and from Freeman.  Freeman seeks apportionment of liability, contribution, and indemnification from Bell.

**A.**

Because the plaintiffs' claims against TIA are dismissed, all of TIA's claims for common-law indemnification must be dismissed, as TIA conceded.  (Tr. at 18.)  TIA's claims for common-law indemnification are therefore **dismissed**.

TIA is left with contractual indemnification claims against Freeman and Fiesta for the costs, expenses, and attorneys' fees

that it has expended in defending this action.

In addition, Fiesta represented at oral argument that it would have no cross-claims against any other party if the sole claim of TIA against Fiesta is the contractual indemnification claim for costs, expenses, and attorneys' fees.  (Tr. at 51-52.) Accordingly, all of Fiesta's cross-claims are **dismissed**.


**1.**

The contract between TIA and Freeman provides that Freeman will indemnify TIA for

> any bodily injury or property damage liability claims, judgments, damages, costs or expense, including reasonable attorneys' fees, arising out of or occasioned by the operations performed by Freeman, except for occurrences or accidents caused by the sole negligence of [TIA] or for occurrences or accidents caused by any other party not under Freeman's direct control.

(Varvaro Decl. Ex. J, "Terms and Conditions," at 1.)

TIA argues that it is entitled to summary judgment requiring Freeman to indemnify TIA for the costs, expenses, and attorneys' fees that TIA has expended in defending itself in this action.  In response, Freeman does not dispute the enforceability of the indemnification clause or the applicability of the clause to the present case.  However, Freeman argues that its duty of indemnification has been extinguished because TIA demanded that Freeman defend and

indemnify TIA unconditionally beyond the scope of the indemnification clause and, after Freeman rejected that allegedly unreasonable demand, TIA refused to allow Freeman's counsel to control TIA's defense.

Under New York law, every contract implies a covenant of good faith and fair dealing, "which encompasses any promises that a reasonable promisee would understand to be included." New York Univ. v. Cont'l Ins. Co., 662 N.E.2d 763, 769 (N.Y. 1995) (citations omitted).  Under this covenant of good faith and fair dealing, "[e]very contract implies that neither party will do anything to prevent performance by the other party . . . ."  Bass v. Sevits, 433 N.Y.S.2d 245, 247 (App. Div. 1980) (citations omitted).  Thus, "[a] promisee who prevents the promisor from being able to perform the promise can not maintain suit for nonperformance; he discharges the promisor from duty." Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank, 524 N.Y.S.2d 531, 535 (App. Div. 1988) (citation omitted).

TIA argues that, because Freeman knew from the outset that TIA was not negligent, any reservation of rights or condition imposed by Freeman was baseless, and Freeman should have agreed to defend and indemnify TIA unconditionally from the beginning. This argument is without merit.  The indemnification clause sets forth the scope of indemnification, and the indemnitor, Freeman, had no duty to indemnify TIA unconditionally and without

21

reservation, which was not bargained-for in the contract.  Cf. Christ the King Reg'l High Sch. v. Zurich Ins. Co. of N. Am., 936 N.Y.S.2d 680, 682 (App. Div. 2012) (no coverage for risk not "bargained-for"); De Lorenzo v. Bac Agency Inc., 681 N.Y.S.2d 846, 848 (App. Div. 1998) (no obligation for insurer to make replacement cost payments unless the condition precedent was satisfied).

In a letter dated June 20, 2011 from Mr. Randy Scroggs of Specialty Risk Services, Freeman's third-party insurance administrator, (Varvaro Decl. Ex. AA at 2), Freeman proposed two main limitations on its duty to indemnify TIA, neither of which was facially inconsistent with its duties under the indemnification clause.  First, Freeman agreed to indemnify TIA against claims that "[arose] out of or [were] occasioned by the operations performed by Freeman, except for occurrences or accidents caused by the sole negligence of [TIA] or . . . by any other party not under Freeman's direct control."  (Varvaro Decl. Ex. AA at 2.)  Second, Freeman disclaimed "any obligation to indemnify TIA against any contractually assumed obligations of TIA, including but not limited to any obligations which TIA may have under its license agreement with NYCCOC to defend and indemnify NYCCOC . . . ."  (Varvaro Decl. Ex. AA at 2.)

TIA has presented no evidence suggesting that Freeman's first limitation on the scope of its indemnification, which

22

closely tracked the language of the indemnification clause, was
inconsistent with Freeman's duty to indemnify TIA.  Similarly,
TIA has presented no evidence showing that Freeman's second
limitation, in which Freeman disclaimed responsibility to
indemnify TIA based on TIA's contractual obligation to indemnify
NYCCOC, was inconsistent with the indemnification clause.
Indeed, TIA does not argue in its summary judgment papers that
this limitation was a breach of Freeman's contractual duty to
indemnify.

Therefore, TIA has failed to carry its burden on summary
judgment to show that Freeman breached its duty to indemnify TIA
by imposing unjustified conditions on its offer to indemnify
TIA.  Moreover, TIA is not entitled to summary judgment, because
Freeman's offer to indemnify TIA, subject to reasonable
conditions, may well have satisfied its obligation to indemnify
TIA and TIA may have prevented Freeman from satisfying its
obligations.

TIA also argues that its refusal to let Freeman's counsel
control TIA's defense was justified because Freeman should have
assigned separate counsel for TIA from the beginning.  According
to TIA, because Freeman refused to defend and indemnify TIA
unconditionally, TIA's interest in the litigation was
potentially adverse to Freeman's.  Even though Freeman has so
far never taken the position that TIA was negligent, TIA argues

23

that Freeman's interest is to demonstrate that TIA was negligent
in order to defeat the plaintiffs' claims against Freeman.
Thus, TIA insists that Freeman should have assigned separate
defense counsel for TIA to avoid any potential conflict of
interest.

However, a potential or theoretical conflict of interest
does not automatically entitle an indemnitee to counsel separate
from counsel representing the indemnitor.  Cf. Pub. Serv. Mut.
Ins. Co. v. Goldfarb, 425 N.E.2d 810, 815 n. (N.Y. 1981) ("When
. . . a conflict is apparent, the insured must be free to choose
his own counsel whose reasonable fee is to be paid by the
insurer." (Emphasis added)).  Indeed, Rule 1.7(b) of the New
York Rules of Professional Conduct provides that

> [n]otwithstanding the existence of a
> concurrent conflict of interest under
> paragraph (a), a lawyer may represent a
> client if:
>
> (1) the lawyer reasonably believes that the
> lawyer will be able to provide competent and
> diligent representation to each affected
> client;
>
> (2) the representation is not prohibited by
> law;
>
> (3) the representation does not involve the
> assertion of a claim by one client against
> another client represented by the lawyer in
> the same litigation or other proceeding
> before a tribunal;[6] and

---

[6] Even though TIA now asserts a contractual indemnification
cross-claim against Freeman, this cross-claim would not have

> (4) each affected client gives informed
> consent, confirmed in writing.

N.Y. Rules of Prof'l Conduct R. 1.7 (2013). Such a provision would be superfluous if the mere possibility that counsel could theoretically adopt a theory adverse to a client automatically creates an irreconcilable conflict of interest requiring disqualification of counsel.

There is no evidence showing that there was ever an actual conflict of interest. Indeed, the record is devoid of evidence that TIA even raised the issue of conflict of interest during its discussion with Freeman over the reservation of rights. Therefore, there is insufficient evidence to decide as a matter of law that Freeman should have assigned and paid for separate counsel at the outset.

Thus, at the very least, triable issues of facts preclude summary judgment in favor of TIA, and TIA's motion for summary judgment on its cross-claims for contractual indemnification against Freeman is **denied**.

### 2.

Freeman also cross-moved for summary judgment dismissing

---

arisen if TIA had initially accepted Freeman's offer to defend and indemnify TIA. Therefore, this cross-claim has no bearing on the conflict of interest analysis because the claim had not yet been asserted at the time the conflict allegedly arose around June 2011. (See Tisman Aff. ¶¶ 4-8, Varvaro Decl. Ex. AA.)

TIA's cross-claims for indemnification against Freeman on the sole ground that the plaintiffs' claims against TIA should be dismissed and that TIA's indemnification claims are therefore moot.  The Court has dismissed the plaintiffs' claims against TIA and TIA's common-law indemnification claims.

However, dismissal of the plaintiffs' negligence claims against TIA does not eliminate TIA's contractual indemnification claims against Freeman for attorneys' fees and expenses, which are contractual obligations whose viability does not depend on TIA's tort liabilities.  See Luna v. Am. Airlines, 769 F. Supp. 2d 231, 234, 243, 250 (S.D.N.Y. 2011) (sustaining contractual indemnification claim for attorneys' fees by a defendant against another defendant despite the tort claims being dismissed against the first defendant).  Accordingly, Freeman's motion for summary judgment on TIA's indemnification claims is **denied.**

### 3.

TIA's third-party claim against Fiesta for contractual indemnification is based on the indemnification clause in the contract between TIA and Fiesta, under which Fiesta rented an exhibition booth at the Toy Fair and agreed to indemnify TIA for any damages or attorneys' fees "which result from, arise out of, or are connected with any acts, or failures to act, or negligence of [Fiesta] or any of its officers, agents, [or]

employees . . . ." (Varvaro Decl. Ex. K at 3, ¶ 10.)  TIA and Fiesta cross-move for summary judgment on TIA's indemnification claims.

Fiesta has made essentially three arguments.  First, Fiesta argues that TIA cannot maintain a common-law indemnification claim against Fiesta because such a claim would be barred under the New York Workers' Compensation Law.  This argument is moot, because TIA concedes that the only claim it has against Fiesta is a contractual indemnification claim.[7]  (TIA's Mem. in Opp'n to Fiesta's Mot. Summ. J. at 1.)

Second, Fiesta argues that, if the plaintiffs' liability claims against TIA are dismissed, the third party action must be dismissed by operation of law.  There is no basis for that argument.  TIA's claims against Fiesta are based on its contract with Fiesta.  Dismissal of tort-liability claims against TIA does not automatically preclude the assertion of contractual indemnification claims by TIA.  See Luna, 769 F. Supp. 2d at 234, 243, 250.

Third, Fiesta argues that the indemnification clause in the contract between TIA and Fiesta is not triggered at all.  Fiesta argues that, because the accident injuring Mr. Hammond was

---

[7] Similarly moot is Fiesta's argument seeking summary judgment dismissing any claim by TIA for breach of contract based on Fiesta's alleged failure to procure liability insurance.  TIA has discontinued that claim.  (TIA's Mem. in Opp'n to Fiesta's Mot. Summ. J. at 1.)

caused by the negligence of Bell and Marshall, the accident did not "result from" or "arise out of," and was not "connected with" any acts or failures to act of Fiesta or Fiesta's employees, as required to trigger the indemnification clause. TIA counters that, because Mr. Hammond was packing up Fiesta's belongings and thus performing Fiesta's contractual duty to clean up its booth under its contract with TIA, the accident did in fact "result from" or "arise out of" acts or failures to act by Fiesta's employee within the meaning of the indemnification clause.

Fiesta relies primarily on Pepe v. Ctr. for Jewish History, Inc., 873 N.Y.S.2d 571 (App. Div. 2009), in which the court held that the accident did not "arise out of" and was not "in connection with" the subcontractor's work, because there was no evidence showing that the subcontractor caused the dangerous condition or that the plaintiff's work was even "remotely related" to the subcontractor's work. Id. at 572-73.

However, in this case, there are genuine issues of material fact as to the degree to which the accident occurred as a result of Mr. Hammond's activities in cleaning up Fiesta's exhibition space. Indeed, Fiesta conceded at the argument of the motion that factual issues existed as to whether the indemnification clause was triggered. (Tr. at 45-47.)

TIA's argument in support of its cross-motion on the same

28

claim mirrors this last argument of Fiesta: TIA argues that it
is entitled to contractual indemnification from Fiesta because
the accident resulted from and arose out of the acts of a Fiesta
employee.  However, there are genuine issues of material fact on
this issue that preclude summary judgment for TIA.

Accordingly, the cross-motions for summary judgment on
TIA's contractual indemnification claim against Fiesta for
costs, expenses, and attorneys' fees are **denied**.


                                **B.**

Finally, Freeman seeks apportionment of liability,
contribution, and indemnification in its cross-claims against
Bell.  Bell moves for summary judgment dismissing all claims
against him, including Freeman's cross-claims, on the ground
that that the one-year statute of limitations has expired.

Under New York law, it is well established that claims for
contribution and indemnification "do not accrue for purposes of
the Statute of Limitations until the party seeking
indemnification or contribution has made payment to the injured
party." Rosenblum v. Columbia Univ. Sch. of Dental & Oral
Surgery, 507 N.Y.S.2d 389, 390 (App. Div. 1986); accord Fisher
v. Preston, 674 N.Y.S.2d 516, 517 (App. Div. 1998).  The same
rule applies to actions against governmental entities and
employees, in which cases special statutes of limitations and

notice-of-claim requirements may exist.  See Bay Ridge Air
Rights, Inc. v. State, 375 N.E.2d 29, 30 (N.Y. 1978); San Marco
Const. Corp. v. Aetna Cas. & Sur. Co., 556 N.Y.S.2d 714, 717
(App. Div. 1990).  Therefore, because Freeman has not yet made
payment to the plaintiffs, the causes of action in its cross-
claims against Bell have not accrued and are thus not untimely.

In his reply brief, Bell raised for the first time the
argument that Freeman's cross-claims are barred by the "anti-
subrogation" rule because Freeman, as an insurer for Bell's
actions, "has no right of subrogation against its own insured
for a claim arising from the very risk for which the insured was
covered." Pennsylvania Gen. Ins. Co. v. Austin Powder Co., 502
N.E.2d 982, 983 (N.Y. 1986).  However, this Court will not
consider arguments raised for the first time on reply.  See,
e.g., Velez, 325 F. Supp. 2d at 317.  It would be unfair to
Freeman to consider an argument as to which Freeman had no
opportunity to reply.

Thus, because the only ground on which Bell has properly
sought dismissal of Freeman's cross-claims is untimeliness and
these cross-claims are not untimely, Bell's motion for summary
judgment dismissing these cross-claims is **denied**.

## CONCLUSION

The Court has considered all of the arguments raised by the

parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons and upon representations of parties at oral argument,

Bell's motion for summary judgment is **granted** on the plaintiffs' claims against Bell, but is **denied** on Freeman's cross-claims against Bell;

Freeman's motion for summary judgment is **denied** on the plaintiffs' claims and TIA's contractual cross-claims against Freeman, but the plaintiffs' negligent supervision claim against Freeman is **dismissed**;

TIA's motion for summary judgment is **granted** on the plaintiffs' claims against TIA, but is **denied** on TIA's contractual indemnification claims against Freeman and Fiesta; TIA's common-law indemnification cross-claims are **dismissed**; and

Fiesta's motion for summary judgment on TIA's contractual cross-claims is **denied**, and all of Fiesta's cross-claims are **dismissed**.

**The Clerk is directed to close all pending motions.**

**SO ORDERED.**

Dated:    New York, New York
          March 28, 2014                    _____/s/_____
                                            **John G. Koeltl**
                                     **United States District Judge**

31